William C. Gates, Respondent, v. William T. Stead, Appellant.

*Contract of employment — provision entitling the employee " to a year's salary or a year's notice" before his discharge, construed — effect of a provision for a revision of the contract.*

William T. Stead entered into a written contract with one Shaw, taking effect January 1, 1891, by which he employed Shaw to act as editor and general director of a publication, to continue so long as he conducted such publication in harmony with certain principles. The contract empowered Shaw to engage a business manager and limited his authority to incur liability to the sum of $20,000 for the first year. It further provided that if Stead should conclude to change the character of the publication in such a manner as would terminate Shaw's connection with it, the latter should receive twelve months' notice of such termination and his salary for that period of time. It also provided that the contract should be deemed a provisional arrangement for a year, after which time it was to be the subject of revision, based upon actual experience in the conduct of the business, and was thereafter to be placed upon a permanent basis.

Shaw employed one Gates as business manager of the publication at a salary of $5,000 a year, and an equal interest in the profits to which Shaw was entitled, by a contract taking effect February 1, 1891. which provided that Gates "becomes entitled to a year's salary or a year's notice in case of any events that would sever his connection against his own voluntary choice," and it was apparently the intention of Shaw to put Gates upon the same basis, as business manager, with respect to the tenure of the employment, that Shaw occupied as editor and general director.

*Held,* that the contracts did not by force of their own terms terminate January 1, 1892, and that certainly, in the absence of the revision contemplated by the contract between Stead and Shaw, Gates could not lawfully be discharged on October 7, 1892, without receiving a year's salary or a year's notice, as provided in his contract.

Appeal by the defendant, William T. Stead, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of March, 1900, upon the report of a referee.

*Horace E. Deming,* for the appellant.

*Frank H. Platt,* for the respondent.

Hatch, J.:

The plaintiff seeks by this action to recover damages for a breach of contract, in that he was wrongfully discharged on October 7, 1892, against his will from its performance; and claims that by

reason of the breach, under the provisions of the contract, plaintiff became entitled to have and receive from the defendant the sum of $5,000. The defendant in his answer admitted all of the material allegations of the complaint, and set up as an affirmative defense, *first*, that the plaintiff was discharged because he was incompetent, negligent, unfaithful and disobedient; *second*, that the written contract under which the plaintiff claimed was abandoned by mutual consent in December, 1891, and was thereafter replaced by a verbal contract, under which the defendant and Shaw, as copartners, temporarily employed the plaintiff from month to month.

The first defense was abandoned upon the trial, and it is not now urged that basis for the discharge existed in that respect. Upon the trial the issues became practically reduced to two; one of law, the other of fact. The legal issue presented the construction of the contract entered into between the defendant and Shaw, which provided for establishing a magazine to be called the *Review of Reviews*, and another between Shaw, as an agent for the defendant, and the plaintiff, which constituted the latter its business manager.

It is the claim of the defendant that both of these contracts, by their terms, expired on the 1st day of January, 1892, and that they ceased thereafter, by force of their own provisions, to be operative. If such be not their proper construction, yet, as matter of fact, the plaintiff's contract, from and after the 1st day of January, 1892, was canceled, and thereafter he was employed, not by Shaw, but by a firm composed of the defendant and Shaw.

The circumstances surrounding the transaction, out of which the cause of action is claimed to arise, are in substance these: Prior to December 26, 1890, Shaw visited England for the purpose of making arrangements with the defendant to establish in this country a publication to be called the *Review of Reviews*, and which should correspond so far as was desirable to a similar publication which the defendant had already established in England. Shaw's negotiations with the defendant resulted in the execution of a written contract by the defendant, which took effect January 1, 1891, whereby Shaw was made editor and general director of the publication, to continue so long as he conducted such publication in harmony with the broad general principles laid down in the first number as interpreted by the issues of the first year. The salary attached to such

position was fixed at £1,000 per annum, and after deducting interest on the capital fifty per cent of the net profits in addition.

By the 3d clause of the contract Shaw was authorized to engage a business manager, and was limited in incurring liability to the sum of $20,000 for the first year. By the 5th clause it was provided that if the defendant concluded to change the character of the *Review* in such manner as would terminate Shaw's connection with it, the latter was to receive twelve months' notice of such termination and his salary for that period of time. By the 7th clause it was provided that the contract should be deemed a provisional arrangement for a period of a year, after which time it was to be the subject of revision, based upon actual experience in the conduct of the business, and was thereafter to be placed upon a permanent basis.

It is quite evident that the parties to the contract contemplated that the publication would be permanently established, and that the only thing which would defeat such a result would be the failure to build up a profitable business, or, if not profitable for the first year, that the possibilities of the future fairly warranted the ultimate success of the enterprise. This view is confirmed, not only by the agreement, but by the character of the publication sought to be established. As the adventure was more or less of an experiment, it is evident that a permanent arrangement was not desirable and might not be practicable, as the latter would necessarily be dependent upon business conditions, and until that condition was more certainly discovered by actual experience, a basis for permanence would not appear. But the enterprise itself was expected to be made permanent, subject to detail of change in management as developed conditions might seem to require.

Shaw returned to this country with the executed contract in January, 1891, and shortly afterwards the plaintiff made an application to him for the position of business manager of the enterprise. Somewhat extended negotiations were had between Shaw and the plaintiff, resulting in a verbal arrangement, which in substance was reduced to writing on February 17, 1891, and signed by Shaw. This contract constitutes the subject of this action and the claimed breach is of its provisions.

By its terms the plaintiff was constituted the business manager of the *Review*, at a salary of $5,000 a year and an equal interest in the

profits with Shaw.   While it was not signed until February 17, ·
1891, by its terms it took effect on the first day of that month.   It
provided that plaintiff in accepting the position " becomes entitled
to a year's salary or a year's notice in case of any events that would
sever his connection against his own voluntary choice."   It also
expressed that it had reference to permanency.   It is evident from
both contracts that, so far as compensation and permanency of
employment were concerned, it was the intent of Shaw to put the
plaintiff upon the same basis, as business manager, with respect to
the tenure of the employment that he occupied as editor and gen-
eral director. .   Such result is easily arrived at by a comparison of
the contracts, and Shaw so testified.

The business was started in February, 1891, and plaintiff then
entered upon the discharge of his duties and continued therein until
his discharge.   In December, 1891, Shaw again went to England
for the purpose of negotiating with the defendant who, it seems,
was laboring at that time under some financial embarrassment.  Shaw
returned from England early in 1892, and from time to time he ·
claimed to have become a partner with Stead and to have made a
different arrangement · with the plaintiff.   The new arrangement
Shaw claimed was not reduced to writing, nor does he give its
terms.   On the contrary, he says : " So far as I recall, there was
not very much said on that general subject," and he follows this
with the statement of a conclusion that plaintiff's employment was
continued from month to month without anything being said
respecting compensation.   It seems clear that the proper construc-
tion of these contracts does not necessarily limit their operation to
the period of a year.   On the contrary, while they evidently con-
templated a revision after the enterprise had been carried on for a
year, and made provision for contingencies as then found existing,·
they did not by mere force of their terms terminate *ipso facto* the
relation of the parties on the expiration of a year from their date,
or on the first day of January following their execution.   On the
contrary, by express provision of the contract, the plaintiff became
entitled to one year's notice or his salary for that period of time, in
the event that his connection with the enterprise was terminated by
any act short of his own voluntary choice ; and this clause applied
with equal force at the expiration of a year from its execution as it

did upon the date of its delivery. The revision of the contract contemplated at the end of a year was not to be a revision which terminated plaintiff's employment unless he so elected; the tenure was as certain then as at the beginning, and such tenure continued until a twelve months' notice was given or salary was paid for that period of time. If, however, we should assume that the right to revise carried with it the right to terminate the plaintiff's engagement and his right to salary, and also Shaw's contract at the expiration of a year, yet, as they were not then revised, they must be regarded as continuing, and to furnish the measure of obligation owed by each party to the other until there was a change, and if there was never any change of their terms by the parties thereto, the rights and liabilities would continue to be measured by the stipulations contained therein, as there would be no other basis from which to determine such respective rights and liabilities.

The defendant's contention, therefore, that the contract ceased on the 1st day of January, 1892, by operation of law, or by its own terms, cannot be sustained. So far as the question of fact is concerned, it was testified by Shaw that he informed the plaintiff upon his return from England in 1892 that he had formed a copartnership with the defendant, and that the agreement with the plaintiff was canceled at that time, but the plaintiff squarely denies such testimony, and states that Shaw told him upon his return that nothing had been accomplished with the defendant, and that the latter would take up such subject later. His version of the conversation had with Shaw at this time was that the old agreement was expressly continued. It is evident, therefore, that the question as to whether a partnership existed between the defendant and Shaw, of which the plaintiff was informed, and whether plaintiff thereafter agreed to continue temporarily in the employment of the partnership, became a question of fact for the referee to determine. Indeed, the testimony of Shaw himself, when carefully examined, would have authorized the conclusion that at that time no partnership had been formed between the defendant and Shaw, but only a tentative arrangement to consummate one in the future. Shaw says, in speaking of the conversation with the plaintiff, "I told him that I had made an arrangement with Mr. Stead for the purchase of a proportional interest in the *American Review of Reviews,* and

that Mr. Stead on his part had agreed to arrange for the lifting of the mortgage," and he further states that he told the plaintiff that he could enter into no new contract until he had definite assurance from Stead that the mortgage was arranged. Shaw nowhere in his voluminous testimony states in detail the arrangement with the defendant, while his letters in connection with his testimony leave the fact of a partnership in considerable doubt. It rests for the most part in a statement of conclusions and understanding upon his part. But, however this may be, in view of all the testimony in the case, it is clear that the referee was authorized to find that the plaintiff was continued in his employment under his contract which the defendant executed by Shaw, and that he was never employed under any other or different arrangement or by any other party. By the terms of the plaintiff's contract, as we have already observed, he could not be discharged against his will without the defendant becoming obligated to give him a year's notice or his salary so long as he continued faithfully to perform his duties.

That he failed in the latter respect there is no pretense or claim, aside from the answer, and no proof was offered to substantiate the charge made therein. .

The contract between Shaw and the defendant clearly authorized the former to make the provision contained in the plaintiff's contract respecting his salary. The only limitation placed upon Shaw's right to contract was that his engagements should not bind the defendant for a greater sum than $20,000 in the first year. There is not a particle of proof to show that Shaw exceeded his authority in this regard or that the expenses incurred in the first year, or during the whole period of plaintiff's employment, exceeded such sum, and in addition to this the defendant, in writing, distinctly ratified the acts of Shaw in connection with his business management of the *Review.*

We think, therefore, that the learned referee was correct in his legal construction of the agreement, and as the breach of plaintiff's contract seems to be established by the evidence, we conclude that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and INGRAHAM, JJ., concurred.

Judgment affirmed, with costs.